Good morning, Your Honors, and may it please the Court, Robert Schaefer on behalf of the appellant, Mr. Makaj. Your Honors, this case requires no more than a straightforward application of this Court's decisions in Tajani and Nataraja, which hold that the government may not hold someone during prolonged removal proceedings without a simple detention hearing. In all material respects, the facts of this case are no different in this Court's decision. Kennedy But hasn't he had a hearing before the DHS officer as to whether he constitutes a flight risk and a danger to the community, and hasn't a DHS officer had a hearing before the DHS officer made a finding that he does, because of his repetitive and recidivist tendencies to steal, commit theft offenses, constitute a danger to the community? Crowther The custody reviews that Mr. Makaj has had do not refer to the DHS officer as a threat to the community. Kennedy Our record shows only one in 2005. Have there been two others? Crowther There actually have been three now. I think the third one may not be in the record, but there have been two that are that I believe are in the record. One in 2005, one in March of 2007, and I believe the third one was just completed in March of 2008. The they're not materially different at all. In fact, the language of the custody reviews is exactly the same. It does not specifically reference any of the other cases. Kennedy Does that agree, too, by the government? Crowther To what extent, Your Honor? Kennedy That there have been three hearings and that they've been similar in findings. First of all, Your Honor, those really are – it's difficult to characterize those as hearings in the sense that Tajani was speaking of, because they did not – there were no hearings. There were, in fact, not even any personal interviews of my client. He was entitled to submit information, but there's no evidence in the written custody determinations other than the blanket statement that we've considered everything you've submitted, but there was no separate specific discussion of any of the materials that he submitted. And, in fact, an interesting point, Your Honor, is none of the convictions that my client has been – has were violent felonies, none of them. And yet, in those custody determinations, the custody officer concluded in those that he was not a danger to the community, without any explanation of what that was. Kennedy Well, thieves are dangers to communities even though they do not use violent means. Crowther Well, danger to the property of others, that may be correct, but if – Kennedy The property is a concept that the law defends. Crowther Well, that is true, but if – the issue here is whether the government is justified in civilly detaining someone for a prolonged period of time, and for that to be acceptable, according to Tahani, Nadarajah, and the Supreme Court's decision in Zavidas, there must be procedural protections associated with that. And the simple argument for why these custody reviews did not satisfy due process is because they, first of all, did not require the government to hold any sort of an actual adversarial-type hearing. They did not have an impartial decision-maker. The burden of proof was not on the government. And if you look at the constitutional discussion in the Supreme Court's decision in Zavidas, it specifically criticized the DHS regulations that authorized these type of paper reviews, and it clearly concluded that they do not provide the minimal type of due process that has been required by that court, the Supreme Court, where anything more than the issue of money has been required is at issue. Any liberty interest greater than the issue of money is at issue. And even the Court said that when property is put at issue, the Constitution requires greater due process. Kennedy Mr. Schaffer, what should be done, in your view? Schaffer Well, what should be done is simply reverse the district court and remand with instructions that the court enter an order requiring DHS to hold a Tajani-type bond hearing or release my client on conditions. That's really the bottom line. Scalia When is this set for argument in this Court on his main appeal? That really would resolve the whole thing, is get that resolved, and then everything kind of falls into place, right? Schaffer Potentially. I mean, this Court, there's no, first of all, there's been no argument set in the case. Briefing is done. There's no argument set. There's no set time period for the Court to rule. The foreseeable process, it's not unreasonable to think that the Ninth Circuit could take several months to resolve the case. But most importantly, my client has raised substantial arguments challenging removal. This Court has granted him a stay. Those are not handed out without reason. He's required to show he has substantial arguments. And, in fact, he does have substantial arguments. There's not ---- Scalia Of course, he can get out immediately, can't he? He just has to ask that the stay be set aside. And he goes back to his home country, and he can continue his appeal from there, right? Schaffer That is an argument that the government makes, Your Honor, but there's ---- Scalia And he'll be free as a bird there. Schaffer Well, that's correct, but it needs to be understood ---- that argument needs to be understood in the context of this case, which is he has raised a torture convention claim. Kennedy But hasn't he gone back to Albania at least on, what, four occasions, two weeks at a time? Or maybe it's two occasions, four weeks at a time. I can't ---- Schaffer Yeah, I don't believe it's four occasions. I'm not sure exactly how long. Kennedy But he's gone back a couple of times, and he's been not tortured, has he? Schaffer Well, he has not been tortured when he has gone back. He ---- there is a history of torture. He was tortured when he was younger. He was put in concentration camps and seriously tortured. Kennedy Of course, the government's changed terrifically since that time, right? Schaffer Well, that is correct. And these are the issues that were raised in the immigration proceedings. They were raised at the Board of Appeals, the Board of Immigration Appeals. The Board of Immigration Appeals did not address these issues the first ---- during the first appeal. That necessitated an appeal or petition for review to this Court. This Court granted that petition for review, sent the case back to the Board of Immigration Appeals. The Board of Immigration Appeals then rejected the claim a second time. So my client has been in detention now, in August he will have been in detention for four years, over twice, over half of that time was necessitated because of his agency proceedings and the successful appeal in this Court. The BIA simply didn't address his torture convention claim, didn't say a word about it. This Court reversed. It then went back to the Board of Immigration Appeals, and we submit and have raised this argument again in the second petition for review that the Board of Immigration Appeals did not look at the government's willful blindness to violence, threats to Mr. Mikhaj's life that will likely happen. Admittedly, he's gone back. That's a factor. He was not tortured. But while he was there, his wife received a threat from someone who she says had an Albanian accent. It was an international phone call. That testimony was credited by the Immigration Court. So this all goes back to the question of whether someone who is in judicial review can be seen as voluntarily or unreasonably prolonging their detention. Most courts that have addressed that issue have said no. Tajani implicitly rejected that argument. It counted time in judicial review toward whether proceedings are expeditious. So there are other reasons, Your Honor. If my client worked voluntarily to end his detention, go back to Albania, and if this Court were to reverse and send his case back to the Board of Immigration Appeals for further fact-finding, for example, if he weren't present, he would automatically be subject to removal. The regulations that the government has require him to be physically present during his immigration proceedings. And if someone is not, does not attend those proceedings, then they automatically have their arguments rejected. So it's a pyrrhic victory, even if he were to challenge, continue to challenge this Court. Kennedy, are you saying that if he went back to Albania and he were to get a new hearing either before the IJ or the BIA, he would not be able to come back here on some sort of special leave? Well, I suppose if the government permitted him to come back, yeah, he could come back. It would be a pretty good due process argument if they didn't. Well, that may be the case. I think that's right. But it does show that we get the argument. The government would stipulate that they would do that. Well, if they want to make that stipulation today, but I tell you, it's not a – there's simply – it's a very, I think – first of all, the notion that someone has a choice simply doesn't apply in this case, given the circumstances of his case. Tahani implicitly rejected the argument. And there are substantial reasons to conclude that perhaps not all judicial review would count as – toward this prolonged detention. But that does not mean that in certain cases some judicial review shouldn't. And in fact, what's the basis for concluding that his first judicial review in this court was voluntary? It was successful. It resulted in a reversal and a remand of the Board of Immigration Appeals. Should that be discounted? This judicial review, substantial arguments have been made. A stay has been entered, which at the very least is some indication of the merits of his claim. In that situation, there's no basis for the government to contend that he's unreasonably prolonging his detention by raising frivolous arguments. If he had raised frivolous arguments in his second petition for review, this court would have simply denied a stay. Well, the government didn't respond, did they? That's absolutely right. They didn't respond. The problem that the government didn't say anything, and so it was kind of a default on them. Well, they didn't contest the merits of the petition. And in fact, the fact that the government didn't respond resulted in additional delay, because this court gave the government a substantial amount of time to respond to the motion for a stay, and only after the government didn't respond did the court then grant the motion and then enter a briefing schedule. So the fact that the government took that time without simplifying a one-page response that said, we don't oppose this, resulted in additional further delay. Can that really be attributed to my client? And for those reasons, I think that in this particular case, in some cases, perhaps it's a reasonable requirement. Well, in all cases, I think it's a reasonable requirement to require the individual to show that they've raised substantial arguments and have potentially meritorious appeals. Okay. Getting back, though, to Tijani and Najrada, under those cases, what they said was that in none of the general detention statutes, other and by general detention I mean statutes that don't specifically deal with issues of national security, none of those general detention statutes explicitly authorized detention longer than a presumptively period, reasonable period of six months. Those cases and the Supreme Court's decision in Zabidas concluded that when Congress does intend to authorize prolonged detention of greater than six months, it does so explicitly. So you say that they can proceed as long as there's a hearing, a Tijani hearing, and that takes care of it. That's as far as it goes with this Court. Well, yeah. For this case, although I think the length of Mr. Mikhaj's detention under some readings of the law, but none that are binding on this Court, may require release. But that's not what we're asking for. We're simply asking for a bond hearing. So if this Court were to simply issue an order requiring the district court require a bond hearing, that's all we're asking for. Simply, you know, if the government wants to detain Mr. Mikhaj for the length of time that it has detained him, it simply has to explain why. And the factors that the government suggests distinguish this case from Tijani, we don't believe they do. But those factors can be taken into account at the bond hearing, the likelihood that this Court will rule on his petition for review. Was any of this time that he was spent awaiting this resolution, part of his time that he was spent on these convictions, or was he already out by that time? I believe he spent approximately a year. It's not clear to me from the record how long he spent in criminal detention. But he spent approximately a year in criminal detention. Then he got out of that and was Then this began. And then this began in August of 2004. So the detention, the civil detention, is about four times as long as the criminal detention for his underlying offenses at this point. Is he still on parole for that or probation or anything like that? He he he probation may still be in effect for that. I'm not quite sure. I'm not quite sure. But the facts of this case show why a hearing is so important in this case. Mr. Mikhaj is married. He's married to a U.S. citizen. He has three children. They live in San Diego. He has a home that he owns with his wife. Those factors are individual factors that should be taken into account in assessing his flight risk and assessing whether he's a danger to the community. And undoubtedly, his prior convictions are a factor as well. But so is the fact that he has been in detention for a fair period of time. And he's entitled to show, or should be entitled to show, his rehabilitation, which in this record also includes a letter from a detention official at the California prison where he stayed. Those are the type of individual factors that ought to be presented to an impartial decisionmaker. And if that decisionmaker shows, decides that the government's justified the detention in light of the person's individual circumstances, then detention can continue. But without that bond hearing, the statutes simply can't be construed as authorizing prolonged detention. That's the bottom line here in Tahani and in Nadaraja and in Zavidas. The Court concluded that in light of the serious constitutional doubt that comes from prolonged deportation – I'm sorry, prolonged incarceration, civil detention, the courts in those cases and under these civil detention statutes were required to – well, they weren't required, but they chose to avoid the constitutional question directly by reading the statutes as limited to detention during a presumptively reasonable period, which in these cases has been found to be six months. This case, first of all, presents the same constitutional problem as in Tahani for the reasons I discussed earlier. It's been held in detention for four years, which is almost twice as – well, it's not quite twice as long as the detention in Tahani, but it's certainly longer. Kennedy. Tahani did not concede removability. Your client did. That is correct. Big difference. Well, it is a difference, but there has been no persuasive explanation, at least from the government, as to why it makes any difference. The critical issue is whether there's a constitutional question, whether there's a constitutional doubt. That in turn depends upon what is the government interest and whether there is a reasonable relationship between the government interest and detention. I submit to you that when an alien concedes deportility – concedes removal but raises substantial claims for why removal shouldn't happen, in other words, seeks relief from removal, substantially there's no difference in the constitutional calculus. And what I mean by that is that when detention is prolonged and there's – and when the alien can show, in light of the length of his detention, that removal is not likely or reasonably likely in the reasonably foreseeable future, then the government's interest in detention is weak. It becomes attenuated. That was the point that was made in Zavidas, and it was also the point that was made in Nataraja. That precise factual situation is the same whether someone concedes removability or not. Here, Akaj is in prolonged detention. He has raised substantial arguments against removal. He has shown that in light of the length of his detention, it's not likely that he will be removed in the reasonably foreseeable future. So the government's – Kennedy, do we have any time for rebuttal, because you're getting down to two minutes? I see that. I'll just make one final point, which is, on this concession point, even if the government says that if the concession changes the constitutional calculus, even if it means he doesn't have quite as strong as a constitutional claim, what the United States Supreme Court said in the Clark v. Martinez case, and this Court said in Nataraja, is if a statute were to raise constitutional doubt as applied to any aliens under that statute, therefore requiring a limiting construction, that same construction would have to apply to all aliens under that statute. Mr. Akaj has been detained under 1226C, and Tahani construed 1226C as limited to – as limited to expeditious removal – expeditious detention. Thank you. I'll reserve the balance of my time for rebuttal. Good morning. May it please the Court, John Unschied on behalf of the Federal Respondents. Can I ask you, counsel, and you may or may not be authorized to do this, but does the government stipulate that if the Petitioner does go back to Albania and proceeds on his cap claim, as he can, right, that if a further hearing is ordered in this country, the Department of Homeland Security will facilitate a permit so that he can come back and testify? Your Honor, I can't stipulate that, but I will say this. I would recommend that to my client because it would be consistent with the spirit of permitting a petition for review to be adjudicated or litigated from abroad, and that's the very purpose, one of the purposes for that. Perhaps you could get your client to make a decision on that and inform the Court by one paragraph letter, a copy to the opposing side. I will certainly do that, Your Honor. And that's the very purpose of what's called advanced parole also. So that is a possibility, and I will provide the Court with that. Otherwise, there's no sense in arguing the fact that if he's removed to Albania that he can still pursue his relief, because he couldn't, could he? That's correct, Your Honor. He could pursue it here, but he can't pursue it further. That's right. It would be disingenuous at best if he were to come back, if he were overseas and succeeded and a removal proceeding was reopened, for the government to say that it's without jurisdiction because he's overseas, we can't adjudicate the claim. But I will respond to the Court in opposing counsel with the letter that's been requested. Your Honor, this case clearly, to make a distinction right off the bat, whether someone is subject to mandatory detention, particularly Mr. Mikhaj, or discretionary post-order custody reviews, and if Mr. Mikhaj were detained under 236C, the mandatory custody provision, he would never have received those reviews over the four-year period. The government simply would have concluded, well, there's nothing we can do. Congress has ordered that you stay mandatorily detained. What kind of hearings are these? Are they, do they bring him in front of an officer, or is it just do it in front of an officer? Or do they do it by mail? The hearings are actually file reviews where the petitioner, Mr. Mikhaj, was permitted to submit evidence on his behalf, and he did so in his case. And then a deportation officer or a field office director makes the conclusion as to whether or not he should be released as a matter of discretion during the pendency of his, as in this case, his judicial review proceedings. As to those, the sufficiency of the post, what they call the post-order custody reviews, weren't exactly litigated below. But there's a lot of questions that were raised as to what was considered and what was not considered, and whether or not it's constitutionally adequate to have such a review. Before getting to the specifics of what was reviewed here, I think it's important to recall, though, that the custody review that's being taken place here is in the final order of removal, who at least at the administrative level has been found conclusively, at least administratively, to be removable from the United States. In other words, the agency has determined that you, sir, no longer have a legal right to reside in the United States. What kicks in after that final order of removal is the government's legitimate interest in making sure that that person is present once the government can execute a removal order. Now, that's a serious and legitimate government interest, particularly in the case It's also a government interest in not sending him to a country where he'll be tortured. That's correct, Your Honor. And that claim has been reviewed twice now by the agency. And both times the Board of Immigration Appeals has affirmed that there is no claim for convention against torture based on the reasons that Your Honor had mentioned that he'd return, I believe, three times, and also that the human rights country reports had indicated that his claim as to torture was not supported by country reports within the country of Albania. But that issue is still on appeal before us. That issue is still on appeal, Your Honor. And as to the petition for review, the Court should take note that obviously what's being challenged is the overall duration of his detention and whether that's lawful. It wouldn't be a problem if it's six months or so. But the problem is it's delayed so long. That's correct. There's not really any good excuse for it, is there? Well, Judge, I mean, as far as proceedings being delayed, proceedings before the agency account for less than half of the time that he was being detained. I think total, when you consider the original proceedings and when it was remanded back, there was a 14-month period that he was detained. The rest of that time has been during dependency of a petition for review. And I think it's very important to note that although Mr. Mikaj requested that these habeas proceedings be expedited, that request wasn't made to the panel reviewing the petition for review. It was the government, actually, just a couple of months ago that asked the Court to expedite that resolution. In this court here? The Ninth Circuit, yes, Your Honor. The government requested a couple of months ago in June to have those proceedings expedited and also requested that the stay be lifted based on the fact that the matter was already briefed and that the briefing shows that he shouldn't, that the CAC claim should not be reversed. Briefing was completed in December of 2007. That motion was filed six months later. It's the government that's taken an interest in expediting those proceedings, although Petitioner has asked for the same here. Now, I should say, of course, that Petitioner responded to that by opposing the request to lift the stay but agreeing that the matter should be expedited, and that was in just a couple of weeks ago in July. As to the post-order custody reviews, the considerations that were given clearly within the post-order custody review, all of them, frankly. There was one in July of 2005, March of 2007, and just recently on April 2nd in 2008, which I just received from my client on Friday. I have a copy of that here. I did not submit it under a cover of a 20HA letter because it's not necessarily authority, but with the court's permission, I would like to provide a copy to the court afterwards under the cover of a letter. The basis for the detention is the same, and what's referenced here is the fact that it also acknowledges that letters were received. The post-order custody review on the back side of it has reflected, excuse me, pardon me, Your Honor. As reflected in the answering brief of the government in the appendix, there is a decision to continue detention. Underneath that is something that's called a post-order custody review worksheet, which has several factors that are considered by the deportation officer, such as criminal history. It also acknowledges in the case of Mr. Mikaj, it gives the criminal history that there were several letters received from his family members, but ultimately concludes. And another very important factor, that once there is a decision, if there is one that affirms the removal order, if you will, in the Ninth Circuit, that the government of Albania has already informed the government, the United States government, that they will accept Mr. Mikaj once an itinerary is faxed to the consulate. This is part of the determination that was made. And that goes directly to the heart of what was raised previously about the Zadvydas decision. It's important to note that after Zadvydas, the government revised its regulations in order to implement a system by which it forces the Department of Homeland Security to make determinations as to whether or not an individual's removable is going to be removed in a reasonably foreseeable future. That consideration was made here also in the post-order Custer reviews. So as far as a constitutionally sufficient review process, the government submits that that exists here, particularly in the context of someone who has been ordered removed, also someone who was actually subject to mandatory detention before the removal order was deemed final by the Board of Immigration Appeals. Here we have Congress saying that these individuals, there is no discretion, particularly where they concede removability, that they need to be detained mandatorily until we reach a decision. The government ---- How long could you keep them as long as necessary? Is there a limit here? Well, this Court hasn't addressed that. It was raised. We cite two cases called Pellich and Lemma in the Ninth Circuit. We submit that this individual is detained under a specific provision, 1231A1C. The Court there said, we're not going to decide the issue of how long you can keep somebody that's detained under 1231A1C. It declined to reach that decision there. But we would submit that the more imminent a decision on removal appears, the extent of the detention, I think, is more justified. As in here, we're hoping, on the basis of our motion to expedite that, we'll get a decision soon. And whether it's sustaining the government, at that point the government will move forward to remove the individual. If the government loses, I think the result of that would actually be that the Ninth Circuit would conclude that Mr. Mikaj actually has a valid Convention Against Torture claim. If I'm not mistaken, on remand, I think the Board of Immigration Appeals, unless further fact-finding is ordered, would have to conclude that he's eligible for withholding and then grant it. And if that happens, the government, of course, has no interest in detaining an individual that they can't remove because of the withholding grant. So the entire duration, Your Honor, I think, of course, that's something that is factored in. I can't give an answer as to how long. That situation hasn't presented itself. We would say that even here, where there's been four years of detention almost under these circumstances, particularly under the imminency, hopefully, of the Ninth Circuit's decision and the petition for review, that his detention is justified at this point and has been during the duration of his custody. I don't know if the Court wants me to go into the specifics of the detention statute. There obviously we argue that it's 1231A1C under which this individual is detained. We cite to another statutory provision under the Judicial Review provisions, 1252B8, which we submit states that when there's a petition for review or even if there's a stay of removal, an individual is detained under the post-order custody statutes under 1231, and not 236, which is, admittedly, the government argued before the district court. It's actually 1231 requires that the alien ordered removed who was removable under 1227A2, this person hasn't been ordered removed yet. Respectfully, Your Honor, I have to ask you. Kennedy, that's the whole purpose of the proceeding which is pending. So why should 1231 apply rather than 1226? Well, the alien has been ordered removed, Your Honor. He hasn't been ordered removed because that order of removal is pending a petition for review by this Court. So it's not a final order. It's not final in terms of whether the government has the authority to remove somebody from the United States. That is correct. But the provision I think Your Honor is referring to is the when the removal period begins provision. The very first part of that subsection I says that the removal period begins once the order of removal is administratively final. There's three alternatives, the first of which being the day that the order of removal is final administratively. That day came once the BIA issued a decision on April 28, 2005. As of that day, the order of removal was administratively final. The removal period began. There was no stay of removal in place. The removal order wasn't being judicially reviewed. But within 30 days later, it was. At that point, what happened was the removal period was suspended under 1231A1C because the stay of removal that was requested stopped the removal period, just suspended it. Now we're under the subsection 2 part of the removal period that says it doesn't begin until the stay of removal is extinguished. Once the stay of removal is extinguished, during that period of time, the alien is detained under 1231A1C under discretionary detention, and he gets the post-order custody reviews that he's been getting during that stay of removal. Once the stay of removal is lifted, the removal period begins anew, and the government has 90 days to remove the individual, or during that period of time, incidentally, the individual is subject to mandatory custody again for 90 days. After that, if there is no stay of removal, there's going to be a determination as to whether or not the individual should – whether the removal is going to be reasonably foreseeable in the near future. And then another, if it makes – the government makes a determination, then three months after that, the six-month period, the Zadvydas regulations kick in that the government implemented, and the determination is made. So the thing that's confused by Mr. McHodge's reply brief is the beginning of the removal period and whether or not there's a final order. We agree the removal period has been suspended. It hasn't begun again. But there has been a final order of removal administratively. In fact, as we point out, if there was no final order of removal under the INA, the Ninth Circuit wouldn't have jurisdiction over the pending petition for review. So it reads together. That's where you get those two provisions seemed next to each other. So far as you're concerned, where are we now in this process? Well, I think where we are right now is the government is hoping, as Mr. McHodge is, that we get a decision imminently in terms of whether he's going to be removed or not from the United States. Just recently in April, there was another custody determination, and at this point the government is still taking the position that given the recidivism, given the fact that their probation was violated by Mr. McHodge, it's certainly an unfortunate situation. This individual was placed in removal proceedings once before, granted a waiver, and again committed an act to put himself in removal proceedings. And under those circumstances, the government obviously has made a decision that it's simply not comfortable releasing Mr. McHodge until the imminent decision from the Ninth Circuit comes down on the issue of removability. So the government, as it's held throughout, is taking a position that his detention is lawful. Most importantly, it's discretionary. It's not mandatory. So it's not a Tahani case. It's not a 236C case. It also comports with Zadvydas. The determination is that there is evidence that Albania will issue a travel document if he's ordered removed, if ultimately we are able to remove him. And everything comports statutorily and constitutionally under these circumstances. Certainly a four-year period is a long time. The government is, I think, has considered that as reflected in the post-order custody reviews, but the government's interest in making sure this individual is removed once it's concluded is equally important, if not more important, than the government's side of things, obviously. And we're pretty close to the end here. And that should be upon us imminently, we hope. Why do you say that Tahani is not applicable here? I'm not sure I understand that. Well, Judge, Tahani, of course, is a very short three-paragraph decision. It doesn't really give much analysis to the detention statutes. But it clearly is a 236C mandatory detention case. Tahani is not applicable for two reasons. One, Mr. Mikhaj conceded he was removable. As the district court correctly held, that's what distinguishes Tahani from DeMoor v. Kim, the Supreme Court case. DeMoor was a case of an individual that conceded, yes, I'm removable, and that's where the finding of constitutional detention took place. So here, Mr. Mikhaj conceded removability. And also, Tahani, in the majority, short majority opinion, states that that individual was subject to mandatory detention for some 30 months. That's just not the case here. This individual is not subject to mandatory detention. This is discretionary detention. The government would admit, of course, that in the concurrence and the dissenting opinion, there is reference made to the fact that it's still pending in the Ninth Circuit. The judicial review of that Mr. Tahani's case was still in the Ninth Circuit, but there was no discussion as to how that interplays with the fact that there's a final order of removal. Judge Callahan makes that point in his dissent and, in fact, suggested that probably the right thing to do, now that there's 1231, perhaps 1231 detention, discretionary detention, is for another petition for or, rather, another petition for writ of habeas corpus to be filed with the district court. So the district court can assess constitutionality under a discretionary detention standard. That discussion is not in Tahani. It's clearly a 236C case, and this is not 236C detention. So if there are no further questions from the panel, I would submit, Your Honor, that the district court reached the correct conclusion in this case, and we would ask that the Court affirm that decision from below. Thank you. First of all, Your Honor, the government conceded that 1226C, the mandatory detention statute, applies in the habeas case in the district court. That is significant because in light of that concession, the government did not argue that detention was discretionary. It did not raise the issue of these custody hearings. The district court did not determine whether these custody reviews comport with Tahani, whether they comport with due process. None of those issues have been decided. The district court simply said, Mr. Mikhaj conceded removability, therefore, his detention is lawful. And we submit, Your Honor, that that decision simply cannot stand because Mr. Mikhaj is being held by the government's own concession under 1226C. Tahani construed 1226C as limited to expeditious removal. Two and a half years was not expeditious in Tahani. Therefore, four years is not expeditious here. Second of all, Your Honor, the government now says on appeal that 1231A1C applies. That applies where an alien acts to prevent their removal. That language cannot be applied in this case. It simply doesn't apply in this case. And the reason why is because Congress used the same language in 8 U.S.C. 1324D to impose a $500 per day fine on an alien that acts to prevent their removal. Does anyone seriously contend that my client, simply because he files a petition for review and seeks a stay, has acted to prevent his removal and can be subject to a $500-a-day fine? The government's statutory analysis simply doesn't make sense in this case, Your Honor. This case is under 1226C. It's no different than Tahani. And even if it were under 1231, the Court has to look at 1231 and say, does anywhere in that statute, does it clearly give the government the authority to detain someone for a prolonged period of time? That was the issue in Nadaraj. It was the issue in Zavitas. Nowhere in 1231A1C or any other provision of 1231 does it give the government the statutory authority to detain for a prolonged period of time. Because that clear bail hearing you're asking, the judge could determine that he's a danger to the community and not let him out. And that would continue the prolonged detention. All we're asking for is a Tahani bail hearing. All right. Thank you very much. The matter will stand submitted. Thank you, counsel, for a very interesting argument. And that completes our calendar for the day. And we will stand adjourned.
judges: Farris, Bea, Siler